GILDERSLEEVE v. HAMMOND.

109　431
115　94

1. LATERAL SUPPORT—EXCAVATIONS—NECESSARY PRECAUTIONS.
   A landowner has the right to excavate close to his boundary line, but must take reasonable precautions to prevent the soil of the adjoining owner from falling.

2. SAME—ABSOLUTE RIGHT TO SUPPORT OF SOIL.
   A landowner who takes such reasonable precautions is yet liable for injury to the *land* of the adjoining owner, if the soil falls from its own pressure, and not from the pressure of a superstructure.

3. SAME—INJURY TO SUPERSTRUCTURE.
   If the fall is caused by the pressure of a superstructure, reasonable precautions having been taken to protect the soil,

the landowner making the excavation is not liable for injury to either.[1]

4. SAME.

But a failure of the landowner to take such reasonable precautions to protect the soil in making the excavation renders him liable for the injury to both the land and the superstructure, if the soil falls solely by reason of. such failure.

5. SAME—CONTRIBUTORY NEGLIGENCE—ESTOPPEL.

One who knowingly, intentionally, and willfully removes the natural support to a building belonging to another, situated 4½ feet from the boundary line, by excavating upon his own land, and allowing the soil, from its own pressure, to cave in and undermine the foundation of the building, is not relieved from liability for the resulting damage by the fact that the owner of the building saw the danger, and failed to shore up the property, especially where such owner was informed by the party excavating that he would protect the building.

Error to Calhoun; Smith, J. Submitted January 16, 1896. Decided May 26, 1896.

Case by Mary I. Gildersleeve against Julia Hammond and another to recover damages for the undermining of a building. From a judgment for plaintiff, defendants bring error. Affirmed.

Plaintiff and defendants were the owners of adjoining lots in Battle Creek, situated in the business part of the city. Plaintiff had, several years ago, erected a building upon her lot, the lower part of which was occupied as a store by a tenant, and the upper portion by other tenants. Plaintiff had no cellar underneath her building, and it stood upon a stone wall sunk into the earth to a depth of from 20 to 24 inches, and from 12 to 18 inches above the surface, and built sufficiently strong to support the structure above it, which was a balloon frame veneered with

---

[1] The cases respecting the right by prescription to lateral support for buildings are found in a note to *Sullivan* v. *Zeiner*, (Cal.) 20 L. R. A. 730.

brick. It had stood there in safety for several years. It was built 4½ feet from the division line between their lots. Defendants' lot was at that time vacant. In 1893 the defendants, desiring to erect a building upon their lot, with a cellar underneath, proceeded to excavate for that purpose to the depth of between 7 and 8 feet, close to the line. The soil was sandy and gravelly, with little adhesive power, and, as the excavation went down, plaintiff's soil caved into the excavation. Defendants took no steps to prevent the soil from caving in, or to protect plaintiff's building. They excavated the whole length of the building, permitting the soil to cave in, according to its natural tendency. It had fallen away from underneath the foundation wall. In consequence of this the foundation under plaintiff's building was undermined, and a portion of the side of the building fell out, causing considerable damage. The defendants were cognizant of the danger. So, also, was the plaintiff, whose evidence supported the claim that defendants promised to protect her building. This is an action upon the case, to recover damages for the injury. The declaration alleges that—

"It was the duty of the defendants to use due and reasonable care and dilligence, and to excavate on their said premises in a careful, skillful, and prudent manner, and to use all proper means, and to take and exercise all reasonable precautions, to keep the soil from caving away and from sliding from the plaintiff's said premises into such excavation, and to avoid weakening or undermining the foundations of said building, and from injuring her said lands, and from destroying the walls, and from injuring the buildings aforesaid thereupon situate, and to prevent all avoidable interference with the use and occupation thereof, and to save the plaintiff from loss and permanent injury to the premises."

Verdict and judgment were for the plaintiff.

*Hulbert & Mechem,* for appellants.

*L. E. Clawson* and *Fred M. Wadleigh* (*John C. Patterson,* of counsel), for appellee.

GRANT, J. (*after stating the facts*). The precise questions involved appear not to have been decided by this court. The questions are:

1. What rights does a landowner possess, in excavating close to his neighbor's line?

2. What duty does he owe to his neighbor, and what means, if any, must he take to protect the soil of his neighbor and prevent it from caving in?

3. Under what circumstances, if any, is such landowner responsible for damages to the superstructure erected on his neighbor's lot?

The defendants' positions are thus summarized:

(1) Plaintiff's building was in a business part of the city. She was therefore bound to know that improvements would be made upon the adjoining vacant lot, and was bound, in law, to so construct her building as to allow such improvements to be made in the ordinary way.

(2) They admit that plaintiff was entitled to the natural right of lateral support for her land from the adjoining land, and, if her land fell in consequence of such excavation, she had an action against the defendants, although the excavating was not done carelessly or unskillfully.

(3) This natural right does not extend to the artificial structures placed upon the land, and, if the plaintiff erected her house on or near the verge of her land, she had no natural right of lateral support for the building.

Plaintiff bases her claim upon the familiar legal maxim, "*Sic utere tuo ut alienum non lœdas*," insisting that this maxim applies to the case where one may, by the exercise of ordinary care and prudence, so use his own as not to cause injury to another.

The court instructed the jury as follows:

"The adjacent owner may excavate his own land for such lawful purposes as he sees fit, provided he digs with ordinary care; and if in so doing the earth gives way, and a house upon the adjacent earth falls by reason of the additional weight placed upon the natural soil, he is without remedy, provided the adjacent owner used rea-

sonable skill, care, and diligence in digging the excavation, and has used reasonable means to protect the adjacent lands and buildings from falling into the excavation."

This was the groundwork of the charge, and we need not state it more fully.

The defendants' first proposition is undoubtedly a correct statement of the law. Chancellor Wallworth, in *Lasala* v. *Holbrook*, 4 Paige, 169, thus states the rule:

"I cannot deprive him [my neighbor] of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit which he may dig in the proper and legitimate exercise of his previous right to improve his own lot."

*Non sequitur* that the excavator may dig his pit so close to his neighbor's line that his adjacent land will fall into it, and, as it falls, draw it away, and continue this process until several feet in width have caved off, and undermined a building several feet from the line. Clearly it was not, in this case, the pressure of the building upon the adjacent land that caused the soil to cave. The soil would have caved in, had there been no building. The caving process began almost simultaneously with the digging. Had the soil been sufficiently adhesive to leave a perpendicular surface as the excavation was made, the building would not have caused it to fall. At least, there is no evidence that it would. Therefore, the pressure of the building did not cause the soil to cave in, but the removal of the plaintiff's soil, between the division line and her foundation wall, caused the building to fall. The distinction between the two cases, and the principles governing them, is apparent.

The defendants' second position is conceded to be the law. It is also the well-established rule that a superstructure is not entitled to the lateral support of the adjoining land, and that a landowner may remove such support for all legitimate purposes. The authorities cited by the defendants fully support this position. 2 Washb. Real Prop. 380 (*74); *Lasala* v. *Holbrook*, 4 Paige, 169 (25

Am. Dec. 524); *Dorrity* v. *Rapp*, 72 N. Y. 307; *Ketcham* v. *Newman*, 141 N. Y. 205; *Gilmore* v. *Driscoll*, 122 Mass. 199 (23 Am. Rep. 312); *Schultz* v. *Byers*, 53 N. J. Law, 442; *Charless* v. *Rankin*, 22 Mo. 566; *Eads* v. *Gains*, 58 Mo. App. 586; *Larson* v. *Railway Co.*, 110 Mo. 234 (33 Am. St. Rep. 439). In order to maintain an action for injury to the adjoining land in consequence of an excavation made by the adjacent owner, no negligence is necessary. Every man is entitled to the enjoyment of his land in its natural state, and any removal of it by excavating the adjoining land is a wrong, *per se*, for which the law gives damages. It would seem to follow naturally that, in such excavations, the landowner is bound to the exercise of some degree of care to prevent the soil from caving in. If the soil is adhesive, so that it will remain in its natural position with the lateral support removed, obviously the excavator may excavate as deep as he pleases,—even close to the boundary line. If, in such case, his neighbor's land caves in by reason of the pressure of the superstructure upon it, it is *damnum absque injuria.* But is this true of a sandy, gravelly soil? Most of the authorities above cited recognize the duty of the excavator to use reasonable care in the performance of his work. Washburn says, at the page above cited, "Such adjacent owner may excavate his own land for such purposes as he sees fit, *provided he does not dig carelessly or recklessly.*" In *Dorrity* v. *Rapp, supra*, it is said:

"The owner of land, in making an excavation on his own premises which may endanger a building on his neighbor's land, is bound to use reasonable care in the prosecution of the work, and is liable for injuries to his neighbor's property resulting from his negligence."

Similar expressions are found in nearly all the authorities cited; and in *Eads* v. *Gains, supra*, the court say, "The law is universal that, for the injury caused to a building by an excavation performed without ordinary care, the excavator is responsible." See, also, *City of*

*Quincy* v. *Jones*, 76 Ill. 231 (20 Am. Rep. 243), in which, at page 241, the court lays down the law as follows:

"If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil, when it has been withdrawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery; but, if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner is entitled to recover to the extent of the injury thus occasioned."

So, in Washb. Easm. (4th Ed.), at page 582, the editor thus states the principle:

"If the owner of the adjoining land takes away the natural support, it does not matter whether he acts with due care and is guilty of no negligence. On the other hand, this natural right of support does not extend to buildings or other additional weights superimposed upon the land, unless, either by express grant or by their existence on the land for a prescriptive period, they have gained an easement of support from the adjacent land. Until they have so acquired that right, the owner of the adjoining land may cut or dig it away as he chooses, provided he does not *carelessly* or *wantonly* deprive his neighbor of the support to his buildings; or, in other words, if the owner of the adjoining land makes excavations of such a nature that by it the adjoining land would, in its natural state, be caused to fall, without the additional weight of buildings upon it, he is liable, whether negligent or not. If the excavation is such that the adjoining soil would not have fallen, had it not been weighted by the buildings upon it, he is not liable, unless he made the excavation carelessly, negligently, or wantonly."

Undoubtedly the courts often find difficulty in determining whether the superstructure did or did not cause the soil to cave in, but in this case we think there is no such difficulty. Plaintiff had erected a lawful building. She had placed the foundation wall 4½ feet from the line. It is. established by the evidence, and is also a matter of common knowledge, that the caving of the soil might have been avoided by either excavating and building the

wall in sections, or by planking to keep the soil in place, as is usually done in excavating to put in sewers and water pipes in similar soil. The evidence on the part of the plaintiff further shows that, in excavations like the one now under consideration, it is common to use one of these two methods, and as the witness Sleeper, a builder of experience, aptly expresses it: "It is a custom of common sense. It is a general custom." Where the fact is in dispute, it must be determined by the jury; and the court in this case left it to them, although we think that he might with propriety have instructed them that there was no evidence that the building caused plaintiff's earth to fall away. Broadly and fairly stated, the defendants' contention is this: They had the right to excavate to the depth of 7 or 8 feet in this sandy and gravelly soil, the entire 55 feet, without any effort to prevent the plaintiff's soil from caving in, to draw it away as it fell until it had fallen to a distance of from 4½ to 5 feet from the boundary line and reached directly under her foundation wall, and that this was an excavation in the usual manner, and with ordinary care. The proposition does not commend itself to our judgment, nor does it seem to us to be based upon sound reason, common sense, and common honesty, which are the foundation of the common law. Nor do we think that the authorities sustain the proposition. On the contrary, we think that such conduct is negligence *per se*, bordering upon recklessness. It is established by the evidence that the caving of the soil could have been prevented by the defendants at an expense of from $15 to $25. In *Larson* v. *Railway Co.*, *supra*, the excavator had notified his neighbor that he should excavate and build his wall in sections. Instead of doing this, he excavated nearly the entire distance in a soil similar to that of the plaintiff, and was held responsible for injury to the building.

Our conclusion as to the law of this and similar cases is:

1. While a landowner has the undoubted right to excavate close to the boundary line, he must take reason-

able precautions to prevent his neighbor's soil from falling.

2. If he has taken such reasonable precautions, and yet the soil falls from its own pressure, he is still liable for injury to the land, but not for any injury to the super-structure.

3. If the pressure of the superstructure causes the land to fall, he is not liable either for injury to the land or superstructure.

4. If he fails to take such reasonable precautions to protect his neighbor's soil, and to preserve it in its natural state, he is liable for the injury to both the land and the superstructure, if the pressure of the super-structure did not cause the land to fall, and it fell in consequence of the failure to take such reasonable pre-cautions.

It is, however, insisted by the defendants that the plaintiff was guilty of contributory negligence, in not shoring up and protecting her own property when she saw the imminent danger. Under her evidence, the defendants informed her that they would protect her building, and this would relieve her from any further responsibility. This evidence was objected to upon the ground that it tended to prove a different cause of action from that set up in the declaration; namely, a liability arising from contract. This clearly cannot be so. It was not introduced or used for that purpose. It was com-petent evidence to relieve the plaintiff from the charge of contributory negligence. *Larson* v. *Railway Co.*, *supra.* Aside from this, however, this is not a case for the appli-cation of the doctrine of contributory negligence. The defendants knowingly, intentionally, and willfully re-moved the natural support to the plaintiff's building, by the removal of her own soil. The building fell while the work was going on. They knew the consequences that must inevitably follow their wrongful acts. One may not deliberately undermine my building, and then avoid the consequences by saying to me, "You might

have protected it." The rule in *Richards* v. *Peter*, 70 Mich. 290; *Talley* v. *Courter*, 93 Mich. 473; *Wilson* v. *Railroad Co.*, 94 Mich. 25; and *Richter* v. *Harper*, 95 Mich. 228,—does not apply to the facts in this case. The record does not show any neglect of duty by plaintiff.

The judgment is affirmed.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred with GRANT, J

HOOKER, J. (*dissenting*). In this cause it is admitted that the defendants did not take adequate means to prevent the soil from falling, and it must be conceded that whatever injuries were done to the soil that were due to that failure may be recovered for; but that is the extent of a possible recovery based upon the proposition that it was their duty to furnish adequate support for the soil in its natural state, unless it is to be also said that "ordinary skill and care" means "adequate precaution," which can hardly be contended. If they do not mean the same thing, as applied to such a case as this, we must conclude that the ordinary skill and care meant is such as is usual to protect the bank in its natural state, or such as is usual to protect the bank with the added weight of the superstructure, and that the test is in neither case adequacy, and that, when the ordinary care required is shown to have been exercised, the loss, so far as the building is concerned, must be borne by the owner, though he may recover for the injury to the land, if its fall was not due to the added weight. Hence it becomes important to determine the degree of ordinary skill and care mentioned, it being obvious that skill and care calculated to prevent the fall of the land and building would be greater than that necessary to support the soil only. It is probable that where the ground is unincumbered by structures or improvements a very slight degree of care and skill is usually exercised, as the injury from a slide is generally slight in such cases, and the facility with which the ground can be restored, and the

slight damage resulting, make it unusual to go to large expense in preventing it.

It is believed that the confusion arising from the decisions upon this subject is traceable to different interpretations of this rule requiring ordinary care. In the earlier cases we find nothing of this rule, the defendants being held strictly to their duty of lateral support as far as the land was concerned, and absolved from all liability for injuries to the building that fell with the soil. *Peyton* v. *Mayor, etc., of London,* 9 Barn. & C. 725; *Wyatt* v. *Harrison,* 3 Barn. & Adol. 871. But in the case of *Dodd* v. *Holme,* 1 Adol. & E. 495, the trial judge said to the jury, "If I have a building on my own land, which I leave in the same state, and my neighbor digs in his land adjacent, so as to pull down my wall, he is liable to an action." And he stated the question for the jury to be whether the fall was occasioned by the defendant's negligence, in which case the verdict should be for the plaintiff. The case was disposed of in the appellate court by saying that it turned upon the defendant's negligence, and so it sustained the proposition that a defendant may be liable for negligently causing a wall to fall, but it does not discuss the character of the negligence required to make him liable. It is noticeable, also, that this was an old house, which, under some authorities, and notably the English cases, gave the plaintiff prescriptive rights to increased lateral support. The case of *Trower* v. *Chadwick,* 3 Bing. N. C. 349, overruled a demurrer to a declaration which charged negligence in the removal of a vault, whereby another vault fell; but the declaration alleged a right to enjoy the support, and the demurrer admitted it. But, if it can he said to have turned upon the question of negligence, it does not decide what degree of care and skill was required. This case was subsequently before the exchequer chamber, where the count was held bad upon the ground that the defendant was under no obligation to give notice of the intended removal of his vault, or to shore up the plaintiff's vault. In *Bradbee* v. *Gov-*

*ernors of Christ's Hospital,* 4 Man. & G. 758, the case last mentioned was discussed, and distinguished from that before the court, which was for negligently permitting brick and mortar to fall through the plaintiff's skylight, etc., and the court said: "The plaintiff, therefore, complains, not of some mere omission on the part of the defendants, but of their doing certain acts in so negligent a manner that by those very acts the plaintiff's house was injured;" adding, "The present case is therefore very like that of *Dodd* v. *Holme,*" 1 Adol. & E. 493. These cases contain a plain intimation of a distinction between negligence in performing a lawful act, and a duty to forego a legal right, or submit to increased expense and inconvenience to protect the plaintiff's building. See, also, *Massey* v. *Goyder,* 4 Car. & P. 165. In the case of *Brown* v. *Robins,* 4 Hurl. & N. 162, the recovery of damages resulting from plaintiff's house falling into a mine by the wrongful undermining of the land was sustained upon the ground that the sinking of the land was *in no way caused by the weight of the house,* thus impliedly recognizing the proposition that the mine owner was only obliged to protect the soil. See opinion of Pollock, C. B., page 192. See, also, discussion of English authorities in *Gilmore* v. *Driscoll,* 122 Mass. 205 (23 Am. Rep. 312).

In this country the leading case is found in Massachusetts, in the case of *Thurston* v. *Hancock,* 12 Mass. 220 (7 Am. Dec. 57), decided in 1815, which went the length of holding that where a house was built within two feet of the boundary, and an excavation by an adjoining proprietor made it necessary to take it down, the owner's damages were limited to the falling of his natural soil into the pit. A more recent decision in the same State (*Foley* v. *Wyeth,* 2 Allen, 131, 79 Am. Dec. 771) impliedly recognizes the doctrine under discussion, saying:

"But it was erroneous, in the absence of any proof of carelessness, negligence, or unskillfulness in the execution of the work, to add that they [the jury] might take

into consideration, as an element of damage for which compensation could be recovered, the fact that the foundation of his house had been made to crack and settle."

This subject was again before the supreme court of Massachusetts in the case of *Gilmore* v. *Driscoll*, 122 Mass. 199 (23 Am. Rep. 312), where recovery was limited to the injury to the soil. That case, like that of *Foley* v. *Wyeth*, contains language that implies that proof of actual negligence upon the part of the defendant in the excavation of his cellar might sustain a judgment for injury to the building of his neighbor. But neither case decides the question, or intimates that the doctrine goes so far as to require a landowner to protect his neighbor's building at his own expense.

In New York the subject was discussed in *Panton* v. *Holland*, 17 Johns. 92 (8 Am. Dec. 369), decided in 1819. In that case the court announced the doctrine that a man might be liable for doing a lawful act in the exercise of a lawful right, where it was done maliciously, although he should take care that there be no ground for the charge of negligence or unskillfulness. But this was *obiter*, as that question was not in the case, which was reversed because the court did not leave to the jury the question of negligence in the matter of taking all reasonable care to prevent the injury. The trial court had directed a verdict for the plaintiff for the value of the house. Therefore the case can hardly be called an authority in support of the doctrine requiring ordinary skill and care beyond that necessary to adequately support the ground. See, also, *Tremain* v. *Cohoes Co.*, 2 N. Y. 163 (51 Am. Dec. 284), and *Radcliff's Ex'rs* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 200 (53 Am. Dec. 357). The later cases of *Dorrity* v. *Rapp*, 72 N. Y. 307, and *Ketcham* v. *Newman*, 141 N. Y. 210, recognize the common-law doctrine, but turn on a statute covering such cases. They throw no light upon this question of negligence.

In Pennsylvania the case of *Richart* v. *Scott*, 7 Watts, 460 (32 Am. Dec. 779), holds that—

"The first builder is bound to use suitable materials, and build them skillfully; for if, upon the excavation for and construction of a house upon an adjoining lot, notwithstanding the use of proper and ordinary care and diligence, the first walls should fall in consequence of their defects, it must be regarded as *damnum sine injuria.*"

A judgment for the defendant was affirmed. While the court held that a charge which left the jury to consider the question of negligence did not injure the plaintiff, it used the following significant language:

"It is obvious, therefore, that in such cases the first builder, and indeed every builder, ought, in putting up his house, to *do it in such a manner as to impose no unnecessary expense or burthen thereafter* upon the owner of the adjacent lot when he shall come to build upon it, or to alter and remodel that which he may have put on it previously. If this rule, however, be disregarded by any one to whom a loss accrues in consequence thereof by the falling of his wall or of his house when the owner of the adjoining lot comes to build thereon, and he comes into court claiming to make the latter answerable for it, it cannot be that he is entitled to recover."

See, also, *O'Connor* v. *Pittsburgh*, 18 Pa. St. 187. That the general doctrine obtains in Vermont, see *Richardson* v. *Railroad Co.*, 25 Vt. 465 (60 Am. Dec. 283).

In *City of Quincy* v. *Jones*, 76 Ill. 241 (20 Am. Rep. 243), it is said:

"If injury is sustained to a building in consequence of the withdrawal of the lateral support of the neighboring soil, when it has been withdrawn with reasonable skill and care to avoid unnecessary injury, there can be no recovery; but, if injury is done the building by the careless and negligent manner in which the soil is withdrawn, the owner is entitled to recover to the extent of the injury thus occasioned."

In *Shrieve* v. *Stokes*, 8 B. Mon. 458 (48 Am. Dec. 401), the adjoining proprietor is said to comply with the law when he "removes his own with reasonable and ordinary care," and that, "if he had a right to dig his cellar to a proper and convenient depth, he cannot be responsible, except for the consequences of neglect in digging." See *McGuire* v. *Grant*, 25 N. J. Law, 356 (67 Am. Dec. 49).

In *Charless* v. *Rankin*, 22 Mo. 566 (66 Am. Dec. 642), it was held that—

"While an owner would be responsible for all damage caused by reason of an excavation having been negligently made, the instruction that he was bound to use such care and caution as a prudent man, experienced in such work, would have exercised if he had been himself the owner of the building, was erroneous, and tended to mislead, as one *who is proprietor of both contiguous lots might prudently subject himself to expense and inconvenience for the protection of his building that could not be justly imposed upon one making excavations upon an adjoining lot.*"

It was added "that the decisive question is whether there was actual negligence in *making the excavations.*"

In *Larson* v. *Railway Co.*, 110 Mo. 234 (33 Am. St. Rep. 439), the court held that—

"The fact that the removal of earth in sections for the foundation of a building involves some additional expense, and lessens in some slight degree the strength of the foundation wall, but not to such an extent as to impair its utility, does not excuse the failure to remove the earth in this manner, where it is necessary for the safety of an adjoining building."

Here is the first instance found where it is held that additional expense may be required, and it is noticeable that the opinion says "that question was immaterial in view of other evidence," viz., that the plaintiff had been promised that the excavation should be made in the more expensive method, upon which he was relying. It was therefore negligent to remove the support without cor-

recting pláintiff's understanding, and giving him an opportunity to protect his building.

In *Schultz* v. *Byers*, 53 N. J. Law, 442 (26 Am. St. Rep. 435), the supreme court of New Jersey held that failure to give notice of an intention to excavate was evidence of want of care. Here, also, a strong dissent is found, in which the authorities are reviewed.

We have before us an interesting example of the origin and growth of a rule, from repeated statements of the converse, to a point where it impinges another rule that is as well supported as any known to the law, viz., that the burden of lateral support cannot be increased to the detriment of the adjoining proprietor. It is a significant fact that, in this long array of cases, few if any grant relief upon the ground of negligence where the only negligence shown is a failure to incur expense, or build a less substantial edifice, that the previously erected building of the adjoining proprietor do not suffer injury. The Missouri case comes the nearest, but it does not unqualifiedly assert the doctrine, while the case of *Radcliff's Ex'rs* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 200 (53 Am. Dec. 357), shows a reasonable limit to the rule. Bronson, C. J., speaking for the court, says:

"But a man may do many things under a lawful authority, or in his own land, which may result in an injury to the property of others, without being answerable for the consequences. Indeed, an act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow. Nor will a man be answerable for the consequences of enjoying his own property in the way such property is usually enjoyed, unless an injury has resulted to another from the want of proper care or skill on his part. In the cases already put, where an action will lie, the party either went beyond the enjoyment of his own property, and entered or cast something on the land of his neighbor, or he diverted a stream of water from the land of his neighbor, without having a title to anything more than the usufruct, or else he used his own prop-

erty in such a negligent and improper manner as to cause an injury to another."

The negligence dwelt upon here is that the wall was not built in sections, and that the bank was not supported, and there is testimony tending to show that either would have increased the expense to the defendants. The evidence conclusively shows that this soil was such that it would have caved, if not supported, although no building had been erected upon it. It is just as clear—because a self-evident proposition—that a stronger support would have been required to keep the bank up, with the added weight of a two-story building, than would have been necessary for the protection of the mere soil. All of this both parties knew. It was not the duty of the plaintiff to support the bank, and she might have recovered slight damage for its disturbance. It was her duty to protect her building, if it was necessary, and she had no right to require the defendants to do it, because of their duty to support the soil. It would cost her no more to protect herself, as was her duty, than it would cost the defendants to protect her; and she should not be allowed to mulct the defendants in damages for not building a support for the soil, if it is apparent that the only one that it was their duty to build (viz., one sufficient to support the soil merely) would have been inadequate, and would not have prevented the destruction. If the excavation for this wall, for its full length and depth, without protection to the bank or building, would have been followed by the fall of the building, and a support for the soil merely would not have prevented it, without materially increased expense, and the plaintiff did nothing to protect herself, though fully aware of the danger, but chose to stand upon the supposed duty of the defendants, and permit the building to fall, she could not lawfully recover for the injury to the building, unless the testimony warranted the jury in finding that the defendants, without impairing the wall, or increasing

its expense materially, could have avoided the dangerous excavations in some way (*e. g.*, by building a course of the wall from one end to the other, following closely upon the final excavation, thereby supporting the bank where fully excavated), and could also find that ordinary care and skill would prompt some such measure, and that it would have been efficacious. Whether that should have been done or not was a question of fact, which should have been submitted to the jury. The court was not warranted in saying to the jury that:

"If you find by a preponderance of the evidence in this case that the plaintiff's soil caved into defendants' cellar as their excavation proceeded, and that the danger of injury to plaintiff's building was clearly apparent, and that the defendants, or either of them, had notice of such apparent danger, it was the duty of the defendants to provide proper artificial supports to prevent the falling of plaintiff's soil and buildings, and thereby to protect her property. And, if you find they failed to do so, the plaintiff is entitled to recover in this suit, and her damages caused thereby."

And he thereby made the case turn upon that one proposition,—that the defendants were required by law to support that bank and building when danger threatened, at all hazards, regardless of expense. As I have attempted to show, that was requiring more than ordinary care and skill in excavating the cellar, within the meaning of the law.

I am of the opinion that the judgment should be reversed, and a new trial ordered.