JONES (O. B.), J.
Plaintiff and defendant were the owners respectively of adjoining parcels of real estate fronting upon the west side of Freeman avenue south of Gest street in the city of Cincinnati. Plaintiff’s property consisted of a two and a half story brick building upon a lot 20 feet front lying immediately north of the premises of defendant which fronted in all 192 feet upon Freeman avenue and contained buildings and appurtenances thereto used by the defendant as a brewery.
The cellar of plaintiff’s house was a little more than nine feet in depth, and the foundation walls were 11-2 feet thick. The cellars of the brewery, extending from Freeman avenue westwardly 102 feet, were of different depths; the one immediately adjoining plaintiff’s property was more than 16 feet in depth and, being under what was used as a driveway, was called “the driveway cellar.” Immediately adjoining the driveway cellar on the south was a cellar 30 feet in depth, which was divided into a cellar and a sub-cellar, the level of the first cellar being about 14 feet below the sidewalk and about 21-2 feet above the level of the driveway cellar. The walls dividing, and supporting these cellars were of good masonry, that between, the plaintiff’s property and the driveway cellar being a 3 foot wall, and that between the driveway cellar and the adjoining thirty foot cellar a 3 1-2 foot wall.
These brewery cellars were used for the purpose of storing beer in large casks. A small gutter ran in the cement floor' *675 along the south wall of the driveway cellar towards the southwest corner where it connected with an iron pipe six inches in diameter which ran through the dividing wall and into the sub-cellar on the south, emptying into an iron tank which was a large receptacle sunk in the corner of the sub-cellar, being about six feet in depth and twenty feet in circumference, into which all of the brewery cellars above mentioned drained. From this tank, by means of a siphon pump, the water was pumped into the city sewer. Large quantities of water were used in these brewery cellars for cleaning casks and scrubbing floors.
The floors of the brewery cellars were cemented with a layer of cinders and a layer of concrete and then a finished surface^ of cement, the layer of concrete being thin, as no frost reached the cellars.
The soil underlying plaintiff’s property and in the surrounding neighborhood consisted of a sandy loam which extended to a depth of about thirty feet below the surface or curb line of Freeman avenue.
These premises are located in what is known in Cincinnati as part of the “flooded district,” being visited from time to time by the flood water from the Ohio river.
In March, 1913, one of these great floods occurred, and on March 30 the waters of the flood rose almost to the curb line of Freeman avenue. Defendant to save its cellars from inundation1 by water backing up from the sewers closed up the sewer connections in the higher cellar thus keeping the flood waters out of its cellars until the 29th or 30th of March, when it discovered that water and sand was coming through the north wall of the driveway cellar, being the wall adjoining plaintiff’s premises,, and that there were cracks in said wall from one to four feet above the floor of said cellar, permitting the water and sand to wash into said driveway cellar. On Sunday defendant endeavored to plug up these cracks and holes through which the water and sand were flowing with planks and oakum, but its efforts proved unsuccessful, and the flow of water and sand became so great in volume that the one pump which was ordinarily .used for the purpose of pumping water from the tank in said cellar was insufficient, and plaintiff placed other pumps. *676 therein and operated the same, for the purpose of preventing the. water from flooding its cellars and destroying its beer.
The flow of sand into said cellar became so great as to cause the iron pipe leading from the driveway cellar into the lower cellar to become choked up to such an extent that it was broken off: by defendant to permit the water and sand to flow through said drain.
Defendant company continued to operate its pumps on Sunday and Sunday night, and about two o’clock on Monday morning, March 31, 1913, the tenants and occupants of plaintiff’s house were awakened' by the noise caused by the breaking of the wall of plaintiff’s building, and by the suction and falling of bricks and other material into the excavation underneath plaintiff’s premises, and they discovered that the yard or passageway of plaintiff’s premises lying next north of defendant’s property had been undermined and that the cellar walls and the wall of said building had fallen into the excavation. Thereupon defendant was notified through its engineer, who had charge of defendant’s property at that time, that the pumping of the water by defendant was undermining plaintiff’s property. Defendant’s engineer then went to plaintiff’s property and inspected it, but refused to stop pumping, as he had orders to prevent the water coming into defendant’s cellar. And defendant continued to pump the water and sand out of its cellar until about nine o’clock on Monday morning, March 31, 1913, at which time the building inspector of the city of Cincinnati ordered said pumping stopped. Previous to the stopping of the pumping the floor of the driveway cellar bulged upward and cracks four or five inches wide appeared the entire width of said cellar, and large quantities of sand, loam and debris was forced into said cellar. It was shown that the south wall of plaintiff’s house was destroyed and the building damaged and rendered untenantable, requiring time and expense to make necessary repairs.
Immediately after the receding of the water defendant made repairs to its north wall of the driveway cellar,' adjoining plaintiff’s property.
At the close of plaintiff’s evidence defendant filed a motion *677 for an instructed verdict in its favor, which was granted and such verdict returned. A motion for new trial filed, by the plaintiff was overruled, and judgment was entered upon said verdict.
Plaintiff seeks here to secure a reversal of the judgment rendered in the court below, urging that the court erred in overruling the motion for a new trial and in sustaining the motion for an instructed verdict .in favor of the defendant.
The theory of defendant, which was adopted by the trial court and upon which a verdict was directed, was that the damages to the defendant were caused by the flood; that the unusual flood should be deemed “an act of G-od” for which no one would be liable; and that this flood might be regarded as a common enemy of all persons who were or might become subject to the invasion of its waters, and that each owner had the right to make such efforts to prevent damage by the flood as the necessity of the occasion required, subject, however, to the principle that he must regard the rights of his neighbors and not by any negligence of his in protecting himself cause damage to them. The decision is based upon the principle laid down in Rex v. Commissioners, 8 Barn. & Cress. 355. In that ease the commissioners of sewers for the levels of Pagham had taken down and removed certain groynes and other works which had been theretofore erected for protection against the inroads of the sea, and had constructed other works in their place. The effect of such changes caused the sea to flood with increased force against the land of one Cosens, for which he claimed damages. The decision in effect required the complaining land owner to protect himself by such works as he might find necessary.
The same principle is announced in other cases upon which defendant relies, among which are: Lamb v. Reclamation Dist. 73 Cal. 125 [14 Pac. 625; 2 Am. St. 775]; Hoard v. Des Moines, 62 Iowa 326 [17 N. W. 527]; Turnpike Co. v. Green, 99 Ind. 205; Railroad v. Stevens, 73 Ind. 278 [38 Am. Rep. 139]; Bass v. State, 34 La. Ann. 494.
This theory, however, is based upon the conclusion that the proximate cause of plaintiff’s injury was the flood itself. It leaves out of view the making of the excavation by the defendant and the construction and maintenance of the extraordinarily *678 deep cellars, which plaintiff insists are the proximate cause of her damage.
The right to recover, which plaintiff seeks, is based upon the doctrine of lateral support as amplified and extended by the enactment of Sec. 3782 G. C. which is in part as follows:
‘ ‘ If the owner or possessor of any lot or land in any municipality, digs or causes to be dug any cellar, pit, vault or excavation, to a greater depth than nine feet below the curb of the street or streets on which such lot or land abuts, or, if there be no curb, below the established grade of the street or streets on which such lot or land abuts, or if there .be no curb or established grade below the surface of the adjoining lots, and by such excavation, causes any damage to any wall, house or other building upon the lots adjoining thereto, such owner or possessor shall be liable in a civil action to the party injured, to the full amount of such damage. ’ ’
At common law the owner of land was entitled to have it supported in its lateral state by the land of the adjoining owner, but that right did not extend to require the support of buildings that had been placed upon the land. Ohio, as well as many other states, however, has provided by statute for excavations in municipalities to a reasonable depth for cellars, and for damages to buildings as well as to the land itself for excavation greater than that reasonable depth. The right of the owner of land to natural support 'is held to be a property right and not a mere easement. Belden v. Franklin, 28 O. C. C. 373 (8 N. S. 159); Burgner v. Humphrey, 41 Ohio St. 340; Joyce v. Barron, 67 Ohio St. 264, 270 [65 N. E. 1001].
Similar statutes have been sustained in: Bloomingdale v. Duffy, 71 (Misc.) N. Y. 136; Dorrity v. Rapp, 72 N. Y. 307; Regan v. Keyes, 204 Mass. 294 [90 N. E. 847].
In Keating v. Cincinnati, 38 Ohio St. 141 [43 Am. Rep. 421], it was held that the right exists as against municipal corporations as well as against individuals, and the city was held liable in the case of an excavation for a street, even though the property injured did not immediately abut upon the street. In the opinion in that case, at page 148, White, J., used the following languagé:
*679 “It can make no difference in principle whether the property is flooded and the soil washed away, or the property is injured and the soil removed from some other cause. It is the injury to the property that gives the right of action; and the author of it is bound to make reparation. ’ ’
Where the right of lateral support has been invaded liability exists, whether the excavation was done carefully or negligently. The doctrine is well stated in Jones on Easements, Sec. 588:
1 ‘ The only neglect necessary to give a cause of action is the neglect to furnish proper supports to the land of the adjoining owner to prevent its caving in. The only proof necessary is of the making of the excavation and of the injury to the adjoining land in consequence. It is not incumbent on the plaintiff to show that the excavation was made by the defendants in a careless, negligent or unskillful manner.
“Though one in excavating and removing the soil on his own land has not conducted the work negligently or in a manner contrary to the custom of the country, he is liable to his neighbor for any injury to his land occasioned by such excavation.
“Where one, by digging on his own land, causes the adjoining land of another to fall, the actionable wrong is not the excavation, but the act of allowing the other’s land to fall. It is the wrong to the right of property that attaches to the right of lateral support. Hence the measure of damages is the diminution of the value of the land by reason of the falling of the soil, and it is immaterial whether this falling be called ‘caving’ or ‘washing,’ provided it is the natural and proximate result of removing the lateral support.”
And Sec. 591:
‘ ‘ * * * The artificial support substituted in place of the natural support of the soil may be of any material, provided it is sufficient for the purpose, and it is continued so as to maintain the land in its proper condition.
‘ ‘ One can not escape liability for an injury caused by insufficient support by showing that the support was a reasonable or customary support, or that the excavations were made with care and skill. It is simply requisite that the support shall prove to be sufficient and effectual. ’ ’
*680 The case of Cahill v. Eastman, 18 Minn. 324 [10 Am. Rep. 184], while not altogether turning upon the question of lateral support is instructive as bearing upon the instant case. It states in the syllabus the general doctrine, as follows:
“The common right of each, is not to be injured in his property by the way in which another uses his.
“Where it is sought to make one accountable for the consequences of acts done by him upon his own land, the question, in general, is not whether he exercised due care, but whether his acts caused the damage. If they necessarily tend to injure his neighbor in his pre-existing rights of property, he is liable in damages for the natural and necessary consequences thereof, irrespective of any considerations as to the care and skill with which such operations may have been conducted. ’ ’
See, also: Ulrick v. Dakota, L. & T. Co. 3 S. Dak. 44 [51 N. W. 1023]; Gildersleeve v. Hammond, 109 Mich. 431 [67 N. W. 519; 33 L. R. A. 46]; Mears v. Dole, 135 Mass. 508.
It is contended by the plaintiff that the cause of the damage was the existence of these deep cellars constructed by the brewery, together with the fact that the walls and bottom of same were not sufficiently tight and strong to prevent the passage of the soil and sand in its semi-fluid condition into these deep cellars from beneath the shallower cellar of the plaintiff.
It would appear that if all the cellars had been of the same depth, say nine feet, there would have been no such injury to plaintiff notwithstanding the flood, even though the defendant had plugged up the openings of the cellar where they connected with the sewer and had kept the water pumped out, because then merely the water in plaintiff’s cellar might have passed into defendant’s cellar but it would not have carried out the sand and soil under the footings of plaintiff’s wall or disturbed her foundations in any way. Nor, in all probability, would any injury have resulted if the defendant had allowed the water to accumulate in its cellars to the same level as that in the plaintiff’s cellar, for the hydrostatic pressure of the water on both sides would have prevented the disturbance of the soil and sand under the foundation of plaintiff’s house.
In ordinary cases the defendant would have an undoubted *681 right to prevent the water coming into its cellar if it were able to do so, and also to pump out any water that did run in. But where, as claimed in this case, defendant has made unusual excavations and constructs cellars to an unusual depth, far below that fixed by statute, and has failed to so construct and maintain them as to preserve the lateral support to the adjoining structure of its neighbor because of such pumping out of the water and the consequent removal and running out of the sand and soil from under the neighbor’s foundations, then the result would be as disastrous and of the same character as though in the original excavation plaintiff’s wall had not been protected but had been suffered to fall into the excavation.
The mere fact that the wall itself stood can not excuse defendant, so long as it allowed soil and sand to pass through its interstices or to pass under its footings by bulging up and breaking the floor of the deep cellar, thus withdrawing the sand and soil from under the foundations and accumulating it in defendant’s cellar.
The duty of one who digs such a cellar beyond th,e statutory, depth is not only to protect the adjoining property while the work is in progress, but during the entire time that he continues to maintain such excavation. The right of a land owner to have his land and buildings sustained while an excavation was being made and a cellar constructed far beyond the statutory depth would be of slight value if only requiring them to be supported during the construction. And the mere fact that the adjoining wall continued to stand up would be of little value if his sub-soil had been allowed to slide or percolate into his neighbor’s'pit, and his building consequently demolished. A case directly in point is Bernheimer v. Kilpatrick, 53 Hun. 316.
Nor is there any difference in the rule of lateral support where, as in this case, the soil which has been withdrawn1 consists of a fluid mixture of sand and loam so blended with the water as to be inseparable from it. Columbus v. Willard, 7 Circ. Dec. 33 (7 R .113); affirmed, 54 Ohio St. 615.
Under the evidence offered by the plaintiff in this case she was entitled to have the case submitted to the jury to determine whether the damages to her property resulted because of the ex *682 istence to an unusual depth of defendant’s cellars, and its failure to prevent the removal or withdrawal of her sub-soil during its operations in pumping out the water. -
In our opinion the court erred in withdrawing the case from the jury and directing a verdict. The judgment is therefore reversed and the cause remanded for a new trial.
Jones (E. H.) and Gorman, JJ., concur.