## COLLIAS *v.* DETROIT & NORTHERN MICHIGAN BUILDING & LOAN ASSOCIATION.

1. ADJOINING LANDOWNERS—EXCAVATION—NEGLIGENCE — EVIDENCE —SUFFICIENCY.

  In an action by the lessees of a building against the adjoining lot owner and contractor for damages alleged to have been caused by defendants' negligence in excavating under the walls of plaintiffs' building without properly protecting it, where there was testimony that defendants tunneled under the wall and the method used to protect it was not a safe and proper one, defendants' claim that a verdict for plaintiffs was against the clear weight of the evidence cannot be sustained.

2. SAME — TRIAL — INSTRUCTIONS — MISAPPREHENSION OF JURY — RIGHTS OF DEFENDANT.

  Failure of the jury to find against the contractor, apparently due to the impression they got from the judge's charge that he was not liable unless he was an independent contractor, in no way affected the legal rights of the lot owner; the finding being that he was not an independent contractor and not that he was not guilty of negligence.

3. SAME—APPEAL AND ERROR.

  If the judge correctly stated the rule in regard to the liability of the lot owner, it may not complain that he erroneously stated it as to the contractor.

4. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—WRITTEN CONTRACT—QUESTION OF LAW.

  Whether building contractors under a written contract were independent contractors in the sense that the owner would not be liable for damages to an adjoining building caused by their negligence in excavating must be determined from their contract, and was a question of law for the court.

5. SAME—RIGHT OF EMPLOYER TO CONTROL INCONSISTENT WITH INDEPENDENT CONTRACTOR.

  Where the contract expressly reserved to the owner the

On liability of owner for fall of wall of building in possession of contractor, see note in 34 L. R. A. 558.

right to supervise and control the work, the contractor was not an independent contractor and the owner was not relieved from liability for the contractor's negligence.

6. APPEAL AND ERROR—DISREGARDING ERRONEOUS INSTRUCTION NOT ERROR.

Where the court gave a requested instruction in favor of defendant to which it was not entitled, a verdict inconsistent therewith was not invalidated thereby.

7. ADJOINING LANDOWNERS—EXCAVATION — DEFENDANT'S ASSUMPTION OF DUTY TO PROTECT WALL RELIEVED PLAINTIFFS.

Where a building contractor, at the suggestion of the city's building inspector, assumed the duty of protecting plaintiff's adjoining wall in accordance with a plan agreed upon by them, plaintiffs were thereby relieved from any further responsibility therefor.

8. LANDLORD AND TENANT—STATUTES—APPLICABILITY — ADJOINING LANDOWNERS.

Act No. 42, Pub. Acts 1917, allowing lessees to surrender leases of premises where buildings thereon had been destroyed, has no application to lessees' action against adjoining landowner for damages to leased building caused by negligence in excavating.

9. SAME—LESSEES' RIGHT TO RECOVER FOR IMPROVEMENTS.

While lessees could not recover for damages to the original building, they could recover for improvements paid for by them.

10. APPEAL AND ERROR—WRONG REASON RIGHT CONCLUSION.

Where the circuit judge was wrong in his reasoning, but right in his conclusion, the judgment will not be reversed.

Error to Genesee; Black (Edward D.), J. Submitted June 14, 1922. (Docket No. 50.) Decided October 2, 1922.

Case by Gust Collias and another against the Detroit & Northern Michigan Building & Loan Association and others for negligent injury to leased premises. Judgment for plaintiffs. Defendant association brings error. Affirmed.

*Withey & Freeman,* for appellant.

*S. S. Pearlstine* and *Parker & Wilber* (*George W. Cook,* of counsel), for appellees.

MCDONALD, J.   On the 1st day of October, 1919, the plaintiffs were conducting a restaurant business in the building known as No. 520 N. Saginaw street, in the city of Flint.   John C. Hughes owned the building and the plaintiffs were his tenants.   They leased the premises on the 1st day of April, 1919, for a term of 2 years with an option for 2 years more, paying a rental of $125 per month for the first 9 months and $150 per month for the balance of the term.   Before they went into possession they repaired the building, put in a tile front, erected an addition to the rear, and made other improvements which they claim cost them in all about $2,500.   Their equipment cost $5,000. The second floor was rented, and they claim that these rentals and their restaurant business made them a net profit of $1,500 a month.   The Detroit & Northern Michigan Building & Loan Association owned the adjoining property on the south.   Desiring to erect new buildings on this property, it made a contract for that purpose with defendant Hibbard, who sub-let the excavating work to defendant Wilkins.   While the excavating was in progress a part of the wall and building collapsed, and the city ordered the remaining portion to be torn down.   The plaintiffs brought this action to recover their damages which they say they sustained because of the negligence of the defendants in excavating under the walls of their building without taking any measures to protect it.   The circuit judge determined the measure of their damages to be the value of the personal property destroyed, the value of the improvements and the loss of profits from the time of the injury to the date of the trial.   The de-

220—Mich.—14.

fendants were represented by separate counsel. All of them sought to show in their defense that the wall fell because of inherent weakness and pressure of the building, and not because of any fault of theirs; that there was no negligence except on the part of the plaintiffs, who were guilty of contributory negligence; and as an additional defense on its part, the Detroit & Northern Michigan Building & Loan Association insisted that defendants Hibbard and Wilkins were independent contractors, for whose acts it was not responsible. At the conclusion of the plaintiffs' case the court directed a verdict in favor of defendant Wilkins and subsequently submitted to the jury the question as to the liability of the other two defendants. The jury rendered a verdict of not guilty as to Mr. Hibbard, and guilty as to the Detroit & Northern Michigan Building & Loan Association, and assessed plaintiffs' damages at $10,000. From the judgment entered thereon, the defendant Detroit & Northern Michigan Building & Loan Association has appealed.

The plaintiffs' right to recover in this action is based upon the following allegations of negligence:

That they "carelessly and negligently removed the earth and dirt next to and under the walls and foundation of plaintiffs' leased building and the addition thereto, in such manner as to cause the earth under the foundation walls to cave in and fall away."

The plaintiffs' building was an old one and the foundation, which was made of cobble stones and mortar, extended into the earth about three or four feet. Upon this foundation the brick wall was laid. The soil was sandy and mixed with gravel. The defendants excavated along the entire south wall to a depth of about three feet, but left a ledge or shelf 30 inches wide extending from the wall in a slanting direction. Mr. Shannon, the city building inspector, who inspected the work from time to time as it pro-

gressed, said that this ledge was sufficient to carry the soil in its natural state, but instructed them not to excavate any nearer the wall until they had taken some means to protect it. As to the means to be used, he testified as follows:

"We talked of several ways, but finally decided. Mr. Hibbard said he had a large steel eye beam he would put across the front corner or pier. I believed a pier under that, and then continuing along in sections, making a drift in where the soil was, or a slight drift under the wall, putting piers along occasionally, then putting other piers when those got set between to support the wall. I approved that plan providing they put some braces across from one building to the other to hold the wall. Up to that time they had taken no precautions whatever to support the building because it was not necessary. I am not aware that there ever were any braces put under the Hughes building or between the Hughes building and the Davison building, or that there was any sill, beam, or girder put in. I made one suggestion to Mr. Hibbard; that the needles under the wall be put under the brickwork instead of under the stone wall. I thought perhaps it would be safer under that on account of the fact that a rubble stone wall is not very dependable to needle under. It does not hold together as walls laid up of brickwork; it won't take the strain as far apart."

Thus far there seems to be no dispute as to the facts. All of the parties apparently considered the wall and building safe. The dispute arises in regard to what followed. The plaintiffs claim that the defendants disregarded the instructions of the city building inspector and excavated under the stone wall in two places. It is said that the first hole was about 30 feet back from the front under the south wall, and that there the excavation was 8 or 9 feet in depth. It was at or near this point that the wall gave way. The defendants deny that they did any excavating after Mr. Shannon gave them his instructions, and insist

that they had not tunneled under the wall before the building fell. These disputed claims presented a question of fact for the jury. It was the controlling question in the case under the rules stated in *Gildersleeve* v. *Hammond,* 109 Mich. 431 (33 L. R. A. 46), and *Bissell* v. *Ford,* 176 Mich. 64, as follows:

"1. While a landowner has the undoubted right to excavate close to the boundary line, he must take reasonable precautions to prevent his neighbor's soil from falling.

"2. If he has taken such reasonable precautions, and yet the soil falls from its own pressure, he is still liable for injury to the land, but not for any injury to the superstructure.

"3. If the pressure of the superstructure causes the land to fall, he is not liable either for injury to the land or superstructure.

"4. If he fails to take such reasonable precautions to protect his neighbor's soil and to preserve it in its natural state, he is liable for the injury to both the land and the superstructure, if the pressure of the superstructure did not cause the land to fall, and it fell in consequence of the failure to take such reasonable precautions."

In his charge to the jury the trial judge applied these rules. They found for the plaintiffs. The defendant urges that this finding was against the clear weight of the evidence. It is true that there was a sharp conflict in the evidence as to the situation at the time the wall gave way. Both sides offered testimony of a very respectable character in support of their claims. Mr. Gable, a witness sworn for the plaintiffs, was a contractor in the city of Flint, with 38 years' experience. He testified that the soil where the excavating was done was of such a character that it would not support its own weight; that putting the underpinning under the stone wall instead of under the brick was not a safe and proper method to protect it. This was also the view of Mr. Shannon, the

city building inspector.   Mr. Gable further testified that two or three loads of dirt were taken out the morning the building fell.   Other witnesses testified that dirt was removed the night before and that holes were tunneled under the wall.   Mr. Overmyer said:

"Every shovelful of dirt taken out of there when the wall was simply standing on a ledge, to shovel under there, would have a tendency to weaken it, and earth exposed in that kind of a condition with that character of soil at that point, would have a tendency to cave in, and it would also have a tendency to slough off to a certain extent."

Under these circumstances, the claim that the verdict is against the clear weight of the evidence cannot be sustained.

Defendant further urges that as the court directed a verdict in favor of the defendant Wilkins, and the jury acquitted the defendant Hibbard, the other defendant could not be held liable.   The releasing of those who actually did the acts complained of and the finding against the one who could only be liable because of the negligence of those released, does present an unusual situation.   It can only be explained on the theory that the jury got the impression from the judge's charge that Hibbard was not liable unless he was an independent contractor.   The court, in substance, so stated.   He said, "It is for you to say, in your judgment, if either are liable, which is liable." He then followed with a statement as to Hibbard's liability if they found that he was an independent contractor, but did not state that he would be liable for his own negligence, though he stated that the Detroit & Northern Michigan Building & Loan Association would be liable.   Counsel for defendant, in their brief, draw the same conclusions from these instructions.   Apparently the jury did not find that defendant Hibbard was not guilty of negligence, but found

that he was not an independent contractor. In view of their verdict there is no good reason why they should not have found against Hibbard, but their failure to do so in no way affected the legal rights of the other defendant. If the court correctly stated the rule in regard to the liability of the Detroit & Northern Michigan Building & Loan Association, counsel cannot complain that he erroneously stated it as to the other defendant.

Whether Wilkins and Hibbard were independent contractors in the sense that the owner would not be responsible for their negligence, must be determined from their contracts, and in this case was a question of law for the court.

In *Van Simaeys* v. *George R. Cook Co.*, 201 Mich. 540, it was said:

"The test of the relationship of master and servant is the right to control; it is not the fact of actual interference with the control, but the right to interference that makes the difference between an independent contractor and a servant or agent."

In the instant case, the contract expressly reserves to the owner supervisory control of the work as follows:

"The work included consists of that called for by the drawings and the specifications prepared for this work by Grant C. MacComber, architect, and is to be executed in accordance with such drawings and specifications under the supervision and to the satisfaction of the said architect.      *      *      *

"The contemplated work shall be installed under the supervision of the architect or his authorized representative, who shall have full power to pass upon the fitness of all materials and labor performed, and cause the removal from the premises of anything, in his judgment, not in conformity with the spirit and intent of these specifications.      *      *      *

"Any careless or incompetent superintendent, foreman or workman, must be removed, forthwith, by

the contractor when notified to do so by the architect. * * *

"He shall provide sufficient, safe and proper facilities at all times for the inspection of the work by the architect or his employees. * * *

"He shall not sub-let any part of his work without the written consent of the owner or architect. * * *

"The contractor shall provide other safeguards necessary for the protection and convenience of the public as required by the architect."

Other provisions showing the relation of the parties might be quoted, but these are sufficient to show that the owner retained the right to control. As was said by Mr. Justice BIRD, in *Bissell* v. *Ford, supra:*

"It is not the case of making the architect the judge as to whether the work has been executed according to the plans and specifications, but the right reserved goes further, and reserves to him the right to partially control the work."

Counsel further urge that the verdict cannot be sustained in view of the following instructions to the jury, which the court gave at their request:

"It is conceded and you will take it as an established fact, that both Hughes, the owner of the premises, and the plaintiffs as well, were present at the place in question, from day to day, and knew what was going on, and that neither Hughes nor the plaintiffs did anything at all to protect themselves and the property in question, or to sustain the wall. I charge you that it was the duty of Mr. Hughes and the duty of the plaintiffs to do whatever was necessary to protect the wall from falling, and if their failure to do that contributed to the fall of the wall and to their damage, they cannot recover and your verdict will be for the defendant."

Of this they say in their brief:

"There is no dispute in the facts in regard to the matter, and the court so charged the jury; then how can the plaintiffs recover, or their recovery be sustained" (citing *Horowitz* v. *Blay,* 193 Mich. 493).

The trouble with counsel's argument is that they were not entitled to this instruction. The evidence is undisputed that, at a certain stage of the work, Hibbard, at the suggestion of the building inspector, assumed the duty of protecting the wall in accordance with a plan agreed upon by them. If defendants assumed the duty of protecting the wall from falling, they thereby relieved the plaintiffs and the owner from any further responsibility therefor. In this the case is distinguished from *Horowitz* v. *Blay, supra,* relied on by defendants. Rather it is governed by the rule stated by Mr. Justice GRANT in *Gildersleeve* v. *Hammond, supra,* where the doctrine of contributory negligence was held not to apply.

Many of the other assignments of error relate to the charge of the court and his refusal to give certain of defendants' requests. These we do not discuss for we are satisfied that the charge contains no error of which defendant can justly complain. The defendant submitted 12 requests and the court gave 10 of them. These 10 requests of themselves would constitute a sufficient charge on the law as far as it was applicable to the facts in the case. And in his general instructions, though some disconnected portions may be open to the objection made by counsel, considered in its entirety, we think it correctly presented the issues between the parties and the law applicable thereto.

It is also urged by counsel that the court erred in allowing the jury to award damages for the value of improvements which plaintiffs had made to the building. Counsel's argument in support of this contention is based on a misapprehension of the privileges allowed lessees under Act No. 42 of the Public Acts of 1917. That act has no application to any question arising in this case, because the plaintiffs are not here suing to recover rents. In holding that this statute precluded

the plaintiffs from recovering for the value of the original building, the circuit judge also misunderstood its purpose and effect. He was wrong in his reasoning, but right in his conclusion, that, though plaintiffs could not recover for the original building, they could recover for the improvements.

We have considered the assignments relative to the admission of testimony and find no reversible error.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.